The issue in this case is whether the trial court erred in entering a summary judgment for the defendants on the plaintiff's claims alleging breach of contract, fraud, and bad faith. The plaintiff claims that she showed a genuine issue of material fact as to whether she was entitled to recover under her deceased husband's life insurance policy, thereby defeating the defendants' motion for summary judgment.
The evidence before the trial court tended to show the following. Before his death in December 1987, Joseph Horace Gillion *Page 1317 
had owned and managed timberland in Coffee and Crenshaw Counties, Alabama, and had been a member of the Alabama Forestry Association ("AFA")[1] since 1971.[2] As one of the benefits to its members, the AFA provided a group life insurance program through Liberty National Life Insurance Company ("Liberty National").[3] Gillion obtained life insurance through this program in the amount of $25,000 on November 4, 1972.
Two years after Mr. Gillion became a member of the AFA, he was admitted to the Veterans' Administration hospital in Birmingham with a diagnosis of alcoholism.[4] Sometime prior to 1987, the V.A. hospital had declared him unemployable because he had been unable to function in a normal capacity due to his alcoholism.
In the summer of 1987, Liberty National advised AFA that it would no longer be writing group insurance, and on October 1, 1987, SAFECO Life Insurance Company became the group life insurer for the AFA. The participation agreement between SAFECO and AFA specified that "all active full-time employees of the policyholder [AFA] working a minimum of 20 hours per week" were eligible to participate in the SAFECO program.
During 1987, Mr. Gillion continued to deteriorate both mentally and physically as a result of alcohol abuse, and he even began to hallucinate. On October 27, 1987, he enrolled in SAFECO's supplemental life plan, selecting $25,000 in coverage for life insurance, designating his job title as "owner." The enrollment form included the following language:
 "I hereby apply for Insurance to which I am entitled or to which I may become entitled under the terms of the group policy or policies issued to the policyholder by SAFECO Life Insurance Company."
Mr. Gillion remained in the V.A. hospital system most of the time from April 1976 until his death on December 18, 1987, in Biloxi, Mississippi.[5]
On April 12, 1988, Mrs. Marguerite Gillion submitted a claim form to SAFECO as beneficiary under her deceased husband's life insurance policy. Upon examination of the claim form, drafted by Mrs. Gillion herself, the SAFECO claims examiner noted that Mr. Gillion had last worked on June 5, 1987, and denied the claim because Mr. Gillion had ceased work prior to the effective date of the plan in October 1987.
Mrs. Gillion responded by letter, stating that her husband had continued to manage her farmland and timberland up until his death. She then contacted her agent, Earl W. Soloman, who mailed a letter to SAFECO, along with a letter from a doctor advising SAFECO that Mr. Gillion had been working up until the time of his death and therefore that Mrs. Gillion's claim should be covered under the SAFECO policy. On June 27, 1988, SAFECO again denied the claim. The letter from the SAFECO life and disability examiner stated in pertinent part as follows:
 "As we stated in our letter of April 19, 1988, this policy states each employee shall become insured on the date he becomes eligible for insurance. However, if he is not actively at work on the day he *Page 1318 
is scheduled to become insured, he shall become insured on the day he returns to active work.
 "The Group Policy became effective October 1, 1987. According to the information in our file, the last date Mr. Gillion worked was June 5, 1987. Because he was not actively at work nor did he return to work after the effective date of the policy, there were no benefits payable for the death occurring December 18, 1987.
 "We advised that there may be a possibility that Mr. Gillion would be eligible for the Waiver of Premium Benefit on the policy with the previous carrier. We suggested that Mr. [sic] Gillion contact them for the necessary forms to file a claim.
 "Based on the information you have recently provided, we have not been able to determine that Mr. Gillion was in fact working after the effective date of the Group Policy on October 1, 1987. Information to this effect will need to be submitted to our office in order for us to further consider this claim for payment. We will be happy to review any additional information that you have regarding Mr. Gillion's work status after October 1, 1987."
The next month, Mrs. Gillion wrote to SAFECO, requesting reasons for the nonpayment of proceeds of her husband's life insurance policy and asking SAFECO to coordinate with Liberty National and AFA to reconsider its denial of payment of the $25,000 in coverage for his life insurance. SAFECO telephoned Mrs. Gillion and again denied payment.
Several days later, the SAFECO examiner sent an in-house message to Mary Hewitt at AFA, which stated that she (the SAFECO examiner) "had received letters from the agent (Soloman) stating that [Gillion] was definitely eligible and [that the SAFECO examiner] had a feeling that he may be right," but that "that is not what the contract says and that is what we [SAFECO] have to go by."
September 21, 1988, John M. McMillan, Jr., the executive vice president of AFA, submitted an application to SAFECO for death benefits to be paid to Mrs. Gillion, recommending payment of the claim and certifying that Mr. Gillion was a "full-time permanent, active employee who worked at least 20 hours per week (or less if in compliance with the minimum work requirements as provided in the policy provision)." This application stated that the last day that Mr. Gillion was actively employed was the day of his death.
On September 22, Mrs. Gillion filed the complaint in this action against AFA, Liberty National Life Insurance Company, and SAFECO, seeking damages for breach of contract and bad faith, alleging that on June 27, 1988, the "Defendants intentionally and without lawful justification breached [the] contract of insurance by refusing in writing to pay her claim under the policy."
After SAFECO received verification from the executive secretary of AFA that Mr. Gillion was employed up until the time of his death, the claim was approved by SAFECO for payment; on October 7, 1988, SAFECO issued a check to Mrs. Gillion in the amount of $25,000. On October 20, 1988, Mrs. Gillion returned the check to SAFECO, advising it to "answer the lawsuit in the time prescribed by law."
Eight months later, Mrs. Gillion amended the complaint to add a fraud cause of action against SAFECO:
 "SAFECO knew or should have known that it had no intention of paying on the requested life insurance policy . . . and its failure to so notify the plaintiff . . . was for the specific purpose of causing the plaintiff . . . to continue making premium payments on . . . a worthless policy of insurance."
Mrs. Gillion added as defendants to the fraud action McMillan and Soloman, individually and as agents of AFA and SAFECO, respectively. The defendants moved for a summary judgment, arguing that there was no genuine issue as to any material fact and that they were entitled to a judgment as a matter of law. *Page 1319 
The trial court dismissed without prejudice AFA and Liberty National[6] on the breach of contract and bad faith counts and entered a summary judgment in favor of all the defendants on the fraud count, except Soloman, who remains in the case on a single claim of fraud. Gillion appealed.[7]
The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
 "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no genuine issue of material fact. Schoen v. Gulledge, 481 So.2d 1094, 1096-97
(Ala. 1985).
Mrs. Gillion must prove her case by substantial evidence. Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co., 547 So.2d 870, 871 (Ala. 1989). Because a trial court's ruling on a summary judgment motion is a nondiscretionary ruling, no presumption of correctness attaches to that ruling, and our review of the evidence properly presented in the record is de novo. Hightower Co. v. UnitedStates Fidelity Guaranty Co., 527 So.2d 698 (Ala. 1988).
We will first address Gillion's claims against SAFECO. She sued SAFECO on an alleged breach of contract, maintaining that SAFECO intentionally and without lawful justification refused to pay her claim under the policy. She argues that there was no requirement in the SAFECO policy for timber managers to work a specified number of hours to be eligible for coverage under the SAFECO policy.
SAFECO contends that the insurance policy clearly states that a condition precedent to the availability of coverage was that the applicant be actively at work a minimum of 20 hours per week on the effective date of the policy. SAFECO emphasizes that Mrs. Gillion admitted that her husband was not working 20 hours per week and affirmatively represented that he had last worked on June 5, 1987. Consequently, because Mr. Gillion had not worked since June, SAFECO concluded that he was not eligible for coverage when the new SAFECO policy went into effect four months later on October 1, 1987.
The SAFECO policy set forth the requirements of eligibility as follows:
"ELIGIBILITY
 "1. All active, full-time corporate officers, sole proprietors, partners and managers.
 "2. All other active full-time salaried employees earning a minimum of $4,000 annually.
 " 'Active' refers to individuals performing regular full-time duties in the business as indicated in the Group Insurance Plan."
According to the participation agreement between AFA and SAFECO, those members of the AFA who were "actively" at work at least 20 hours per week were eligible for coverage without any classification under the SAFECO policy. This Court has held that similar conditions of coverage and benefits under a policy of insurance are valid and enforceable; the applicant's failure to meet those conditions of the contract prevents recovery.White v. Massachusetts Mutual Life Ins. Co., 275 Ala. 581,157 So.2d 6 (1963). *Page 1320 
We hold that the summary judgment was improper on the breach of contract count. There is substantial evidence in the record that, if believed by a factfinder, would entitle Gillion to recover for breach of contract. Mr. Gillion originally enrolled in AFA's group life insurance program as an "owner" of timber. Seventeen years later, when SAFECO became the group life insurer for AFA, Gillion still designated his job title as "owner." Neither policy stated that the corporate officers, sole proprietors, partners, landowners, managers, and foresters had to work a specific number of hours in order to be eligible for coverage under the policy.
Furthermore, after SAFECO initially denied coverage under the policy because the claim form indicated that Mr. Gillion had ceased work prior to the effective date of the policy, Gillion responded by a letter stating that her husband had continued to manage her farmland and timberland up until his death. She then contacted Soloman, who mailed a letter to SAFECO, along with a letter from a doctor advising SAFECO that Mr. Gillion had been working up until the time of his death. Soloman specifically recommended that Gillion's claim be considered covered under the terms of the policy. However, SAFECO again denied the claim.
After it received verification from McMillan that Mr. Gillion had been employed up until the time of his death, and after Gillion had filed a complaint against it, SAFECO agreed that it was liable under the terms of its policy and sent the benefits of the policy to Gillion, who returned the check to SAFECO, advising it to "answer the lawsuit in the time prescribed by law." While the trial court erred in entering the summary judgment for the defendant on the contract claim, nevertheless, the reversal of that judgment is without prejudice to SAFECO, which has admitted liability under the policy by issuing to Gillion a $25,000 check for the life insurance benefits due to her upon the death of Mr. Gillion.
In accordance with Rule 1(c), A.R.Civ.P., which states that the Rules of Civil Procedure "shall be construed to secure the just, speedy and inexpensive determination of every action," if SAFECO deposits the policy proceeds with the court and admits liability under the contract, as SAFECO is apparently willing to do, then (because of this Court's affirmance of the summary judgment as to the fraud and bad faith claims, seeinfra) the trial court may dismiss this action under such terms as the court deems just and proper, which could include taxation of court costs against SAFECO. If Gillion should insist upon prosecuting the action even in light of SAFECO's willingness to confess the claim, we would call her attention to the provisions of Ala. Code 1975, § 12-19-272 (court to award fees and costs against a party who brings an action "without substantial justification").
Gillion also alleged against SAFECO a claim that its refusal to pay her claim was not based upon any "reasonably legitimate, arguable or debatable reason," and further, that it "intentionally failed to determine whether or not there was any lawful basis for [its] refusal to pay [her] claim."
In Stone v. Southland National Insurance Corp.,589 So.2d 1289 (Ala. 1991), we discussed bad faith actions, quoting with approval from United American Ins. Co. v. Brumley,542 So.2d 1231, 1235 (Ala. 1989):
 "In Alabama there are two 'prongs' to a bad faith action. This Court stated those 'prongs' in Jones v. Alabama Farm Bureau Mutual Casualty Co., 507 So.2d 396, 899 (Ala. 1986):
 " '[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either "(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." '
 "The plaintiff in a bad faith action has a heavy burden, National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala. 1982), and the elements of bad faith refusal to pay are: *Page 1321 
 " '(a) An insurance contract between the parties and a breach thereof by the defendant;
 " '(b) An intentional refusal to pay the insured's claim;
 " '(c) The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 " '(d) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
 " '(e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.'
 "Independent Life Accident Ins. Co. v. Parker, 449 So.2d 233 (Ala. 1984).
 "[The defendant] points out that in connection with these holdings the Court has held that usually for a plaintiff to make a prima facie case of bad faith, he must be entitled to a directed verdict on the underlying claim alleging breach of the insurance contract."
"If any one of the reasons for denial of coverage is at least 'arguable,' this Court need not look any further."McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,437 So.2d 86, 91 (Ala. 1983). SAFECO had a reasonably legitimate and arguable reason to deny Gillion's claim. Standing alone, the claim form submitted by Gillion disclosed that her husband had last worked over three months before the SAFECO policy became effective. An insurer has the right to take an insured's statements on their face and to assume their truth. OldSouthern Life Ins. Co. v. Spann, 472 So.2d 987 (Ala. 1985). Consequently, the claim form submitted by Gillion provided SAFECO with an arguable reason for denying the claim, and one reason is enough to defeat a claim alleging bad faith.
Further, there is no evidence that SAFECO intentionally failed to determine whether there was any lawful basis for the initial refusal of Gillion's claim. In SAFECO's June 1987 letter denying coverage, it requested information to officially verify that Gillion was in fact working after the effective date of the policy, stating that it would be "happy to review any additional information." Within two weeks after SAFECO received verification that Gillion had been actively employed as of the date of his death, it approved Gillion's claim and issued her a check for $25,000. Thus, Gillion cannot complain that SAFECO did not investigate the claim once it received evidence that the initial claim report it had based its denial on might have been incorrect. See King v. National FoundationLife Ins. Co., 541 So.2d 502 (Ala. 1989).
Gillion bases her fraud claim upon allegations that SAFECO accepted her husband's employee enrollment form and retained subsequent insurance premium payments knowing that it had no intention of paying on the requested life insurance policy upon her husband's death. As to any claim that Mr. Gillion was defrauded, that claim sounds in tort and, because it was not filed before the death of Mr. Gillion, the allegedly defrauded party, it does not survive in favor of his personal representative. See Ala. Code 1975, § 6-5-462; Sanford v.Western Life Ins. Co., 368 So.2d 260 (Ala. 1979).
As to any claim that SAFECO defrauded Mrs. Gillion, she must prove that her claim satisfies the elements of fraud. This Court set forth the critical elements of fraud in Army AviationCenter Federal Credit Union v. Poston, 460 So.2d 139, 142-43
(Ala. 1984):
 " '(a) [A] false representation [usually] concerning an existing material fact . . .;
 " '(b) representation which (1) the defendants knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling plaintiff that defendant had knowledge that the representation was true while not having such knowledge;
 " '(c) reliance by the plaintiff on the representation and that he was deceived by it; *Page 1322 
 " '(d) reliance which was justified under the circumstances; [and]
 " '(e) damage to the plaintiff proximately resulting from his reliance.' "
(Quoting First Virginia Bankshares v. Benson, 559 F.2d 1307,1313 (5th Cir. 1977) (citations omitted).
The record before us contains no evidence of any representation to Mrs. Gillion by SAFECO. In fact, she admitted that she did not even know that SAFECO was providing the group policy for life insurance coverage through AFA until it denied her claim for benefits. She testified in her deposition that when Soloman advised her that "they" were denying the claim, she assumed that "they" was Liberty National. Therefore, the summary judgment in favor of SAFECO was proper as to the fraud claim.
Gillion also sued AFA and McMillan on a fraud claim, alleging that:
 "1) AFA and McMillan did advertise and publish certain facts,
 "2) that these defendants knew or should have known that SAFECO could not live up to those facts as advertised and published, and
 "3) that the plaintiff's deceased, Joseph H. Gillion, and the plaintiff acted upon the advertising and publishing and did not make other provision for insurance on the life of Joseph H. Gillion."
All claims that AFA and McMillan defrauded Mrs. Gillion must be addressed to representations made about coverage under the new SAFECO plan. The record reveals that, as with the prior Liberty National plan, all correspondence regarding the SAFECO plan was sent to Mr. Gillion. Neither AFA or McMillan sent any information regarding the SAFECO group policy plan to Mrs. Gillion. In fact, Mrs. Gillion's last contact concerning the AFA group insurance plan was a conversation that she had with Earl Soloman in March 1975. Mrs. Gillion admitted that she did not know that coverage had changed to SAFECO until she filed her claim for benefits after her husband's death.
As we stated earlier, fraud is a personal tort. Because Mr. Gillion had not instituted a fraud claim, no action lies for any alleged misrepresentations made to him. See Bates v. L NEmp. Credit Union, 374 So.2d 323 (Ala. 1979). The only possible fraud action is an action based on an alleged fraud directed against Mrs. Gillion. Consequently, the alleged misrepresentations must have been made to and relied upon by Mrs. Gillion. North Carolina Mut. Life Ins. Co. v. Holley,533 So.2d 497 (Ala. 1987). Gillion's own testimony from the record reveals that no representations were made to her concerning the SAFECO policy.
Finally, Gillion's contentions regarding the alleged agency relationship among the defendants are ineffective to establish liability on the part of AFA or McMillan.
Based on the foregoing, the judgment is hereby affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] The AFA is a group of individuals and corporations interested in the forestry industry of Alabama. When Gillion joined in 1971, the association was called the Alabama Forest Products Association, and the policy was issued to the trustee of the Alabama Forest Products Insurance Trust Fund. The name of the association changed in 1972 to Alabama Forestry Association. Gillion joined the association as a landowner.
[2] Gillion also worked at Searcy Funeral Home in Enterprise, Alabama, from 1964 until June 1973. His employment was terminated because he repeatedly reported to work under the influence of drugs.
[3] This life insurance program was initiated in 1962.
[4] Gillion and his wife, Marguerite, were subsequently divorced, and she was awarded all of their real estate by order of the court in April 1975.
[5] Gillion's death was caused by atherosclerotic cardiovascular disease, and the certificate of death noted that chronic alcoholism and abdominal aneurism were conditions contributing to his death.
[6] The appellants do not appeal the dismissal as to Liberty National.
[7] Upon appeal to this Court, the clerk's office remanded the cause, pursuant to Foster v. Greer Sons, Inc., 446 So.2d 605
(Ala. 1984), for a Rule 54(b), Ala.R.Civ.P., certification of finality. The Rule 54(b) order was entered by the trial court on September 26, 1991. The claim against Soloman remains pending in the trial court.