The plaintiff, Perry Harrington, appeals from judgments in favor of the defendants, Guaranty National Insurance Company and its parent company, Landmark American National Insurance Company, Inc.
Harrington sued the defendants on claims of "bad faith" refusal to pay an uninsured motorist ("UM") claim and breach of contract. Uderlying this lawsuit was Harrington's 1990 involvement in a vehicle accident. At the time of that accident, Harrington was driving a tractor-trailer truck owned by his employer, T. M. Gorham Trucking Company. Just after he rounded a "blind" curve on a two-lane highway, he observed a mobile home towed by a truck encroaching into his lane; also, in an apparent reaction to the encroachment by the mobile home, the driver of the vehicle in front of Harrington had stopped so that that driver's vehicle blocked Harrington's lane. By the time Harrington was far enough around the curve to observe this situation, it was too late for him to take any evasive action other than to veer off the road. Harrington did veer off the road, and his truck overturned, injuring Harrington. The driver of the truck towing the mobile home did not stop, and his identity was unknown.
Harrington's employer, Gorham Trucking, had UM coverage through Guaranty National Insurance Company, a subsidiary of Landmark American National Insurance Company, Inc. (collectively "Landmark"). In August 1990, Harrington's attorney notified Landmark that "Harrington may be entitled to uninsured motorist benefits. . . . We are currently investigating the accident and will notify you when our investigation is complete." In October 1990, Sandra Swenson, a senior claims adjuster for Landmark, wrote back to Harrington's attorney, stating that there was a "contact requirement" in Gorham Trucking's UM policy. Swenson quoted the pertinent policy language, which defined "uninsured motor vehicle" as: "This is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an 'insured,' a covered 'auto' or a vehicle that an 'insured' is 'occupying.' " (Emphasis added). Swenson added, "Per this endorsement, *Page 325 
it would appear that there would be no coverage available to Mr. Harrington. . . . [N]o contact ensued between the insured vehicle and the unknown vehicle listed."
Approximately three months later, on January 16, 1991, Harrington's attorney wrote to Swenson, stating that Harrington was making a claim on the UM coverage and requesting a payment in the amount of the policy limit. He also wrote, "According to the definition of uninsured motorist under the Alabama Code, Mr. Harrington can recover for injuries suffered as a result of a phantom motorist."[1] Swenson wrote back on February 8, 1991, stating the opinion that the policy in question did not cover Harrington's claim because the contact requirement of the UM coverage was not met. Swenson added, "If you have any information which would alter our decision, please contact me immediately." Eleven days later, counsel for Harrington wrote Swenson again, and this time correctly stated that, based on State Farm Fire Cas. Co. v.Lambert, 291 Ala. 645, 285 So.2d 917 (1973), the "contact requirement" of the policy was void as against public policy. Three days later, on February 22, 1991, Swenson responded by letter, stating that she had reviewed this new "information." Swenson also conveyed her company's willingness to pay Harrington's claim, and she wrote that she would contact Harrington's attorney "with a settlement offer under the uninsured motorist coverage available to Mr. Harrington," after reviewing Harrington's medical records. Swenson also sent Harrington's attorney a copy of the declarations page of the policy in question, and noted that the policy had a "$40,000 combined single limit."
In sum, approximately one month after Harrington made a claim and within three days of being notified about theLambert case, Landmark indicated that Harrington's accident was covered and conveyed its willingness to pay on the claim.
Approximately a month after Landmark had done this, but before any agreement was reached as to a settlement amount, Harrington sued Landmark for breach of contract and bad faith refusal to pay, based on Landmark's initial denial of coverage. Landmark moved for a summary judgment, arguing, on the bad faith claim, that Harrington had not offered substantial evidence to rebut its prima facie showing of the absence of a genuine issue of material fact, and arguing that it was entitled to a judgment as a matter of law. On the breach of contract claim, Landmark produced newly acquired evidence as to the identity of the phantom driver and evidence that that driver was insured, to show that the UM coverage did not apply in any event. The trial court granted Landmark's motion for summary judgment, and from this action, Harrington appeals.
We first address Harrington's arguments as to his claim of bad faith.
This Court has stated the elements of the tort of bad faith as follows:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, the plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Page 326 
National Sec. Fire Cas. Co. v. Bowen, 417 So.2d 179, 183
(Ala. 1982) (emphasis original).
At issue here are elements (d) ("actual knowledge of the absence of any legitimate or arguable reason") and (e) ("intentional failure to determine whether there is a legitimate or arguable reason"), one of which must be shown in support of a bad faith claim.[2] See Jones v. Alabama FarmBureau Mutual Casualty Co., 507 So.2d 396, 399 (Ala. 1986) (stating that one must prove, as an element of a bad faith claim, either that the defendant had "no lawful basis for the refusal coupled with actual knowledge of that fact" or an "intentional failure to determine . . . any lawful basis for such refusal").
Harrington argues that he produced substantial evidence on the "intentional-failure-to-determine" element and argues that a summary judgment is inappropriate as to the element of "actual knowledge of the absence of any legitimate or arguable reason."
A summary judgment is proper where there is "no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Ala.R.Civ.P. 56(c). The burden of showing that this standard is met is the movant's. If the movant makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to rebut that showing by presenting evidence creating a genuine issue of material fact. Stephens v. City ofMontgomery, 575 So.2d 1095, 1097 (Ala. 1991). To rebut the movant's prima facie showing, the nonmovant must produce, in support of his or her claim, "substantial evidence" creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
As to whether Landmark had "actual knowledge of the absence of any legitimate or arguable reason" for its initial refusal to pay, Harrington argues that "this is a fact question which is not appropriate for disposition by summary judgment." We disagree. As stated, a summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c).
Harrington presented no proof that Landmark had "actual knowledge of the absence of any reasonably legitimate or arguable reason" for its refusal to pay (e.g., knowledge of the Lambert decision), to rebut Landmark's prima facie showing that it had no such knowledge. Accordingly, the summary judgment was proper as to any bad faith claim by Harrington based on the allegation that Landmark had actual knowledge of the absence of any legitimate or arguable reason to refuse to pay.
Harrington argues alternatively, however, that he produced substantial evidence that Landmark intentionally failed "to determine the existence of a lawful basis" for its denial, i.e., intentionally failed to investigate his claim. Harrington argues that Landmark must have acted intentionally, because, he argues, this is the logical and reasonable inference to be drawn from its claimed or apparent ignorance of the Lambert decision. Harrington states: "The holding in Lambert has been the law of Alabama for 19 years. It is inconceivable an insurer issuing policies in Alabama containing UM coverage would be unaware of this fact." We disagree with Harrington's argument that the fact of this mistake of law is evidence of a conscious intent to injure.
We have stated, "Since recognizing the tort of bad faith in Alabama, this Court has held that proof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a . . . conscious intent to injure." Davis v.Cotton States Mut. Ins. Co., 604 So.2d 354 (Ala. 1992). In this instance, Landmark made a prima facie showing that it had been mistaken as to the applicable law; and, like most mistakes, Landmark's mistake could have been avoided by the use of more care. However, Harrington presented no evidence to rebut Landmark's *Page 327 
prima facie showing, i.e., no evidence that Landmark's "mistake" was the product of a conscious intent to injure Harrington.
In Gillion v. Alabama Forestry Ass'n, 597 So.2d 1315 (Ala. 1992), we addressed a situation similar to this one. In that case, a widow/beneficiary sued SAFECO, alleging bad faith, because it had denied coverage on a group life insurance policy insuring her husband. Policy language provided that if the husband was not actively working when he was originally scheduled to become insured, then he became insured on the first day thereafter that he returned to active work. According to information provided by the widow, it appeared that the husband had been continuously unable to work during the time he was a SAFECO policyholder, and therefore, that he never became insured. SAFECO denied coverage, but wrote to the widow:
 "Based on the information you have recently provided, we have not been able to determine that [the husband] was in fact working after the effective date of the Group Policy. . . . Information to this effect will need to be submitted to our office in order for us to further consider this claim for payment. We will be happy to review any additional information that you have regarding [the husband's] work status after [the effective date of the group policy]."
Id. at 1318.
On a claim of bad faith based on an "intentional-failure-to-investigate" theory, we held:
 "[T]here is no evidence that SAFECO intentionally failed to determine whether there was any lawful basis for the initial refusal of [the widow's] claims. In SAFECO's . . . letter denying coverage, it requested information to officially verify that [the policyholder] was in fact working after the effective date of the policy, stating that it would be 'happy to review any additional information.' Within two weeks after SAFECO received verification that [the policyholder] had been actively employed as of the date of his death, it approved [the widow's] claim and issued her a check . . . Thus, [she] cannot complain that SAFECO did not investigate the claim once it received evidence that the initial claim report it had based its denial on might have been incorrect."
597 So.2d at 1321.
Similarly, in the present case, Swenson discovered policy language that clearly appeared to give Landmark a lawful basis for its initial refusal to pay the claim. She wrote to Harrington's attorney, "If you have any information which would alter our decision, please contact me immediately." Once informed of the Lambert decision (which was also initially undiscovered by Harrington's attorney), Landmark acted within three days to reverse its position.
Based on the foregoing, we affirm the summary judgment as to Harrington's bad faith claim.
On his breach of contract claim, Harrington argues that Landmark breached its contract of insurance with his employer by its "inaction . . . in dealing with a claim involving what is often referred to as a 'phantom' motorist." Harrington states that this inactivity occurred between the time of "Harrington's initial notice to Landmark of an uninsured motorist claim until the filing of Landmark's suit." Based on the record, this would have been between January 16, 1991, and March 11, 1991.
We are not persuaded by Harrington's arguments that the delay amounted to a breach of contract. We note, for example, that Landmark agreed to pay Harrington's claim, in a then undetermined amount, approximately a month after he made it.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] This of course, was not responsive to the question raised by Swenson, whether the "contact requirement" of the policy precluded coverage.
[2] Although in regard to the breach of contract claim the defendants argue that there was no breach, they do not make that argument as to the bad faith claim. *Page 328