HOOPER, Chief Justice
(dissenting).
The majority summarily affirms the judgment of the trial court in favor of the plaintiffs for $100,000 — $20,401.37 in compensatory damages and $79,598.63 in punitive damages. I would reverse that judgment and hold that the defendant was entitled to a directed verdict; therefore, I must respectfully dissent.
In May 1992, Francis Gipson purchased an accident insurance policy from Life Insurance Company of Georgia (“Life of Georgia”), which covered her minor son Roy. On July 23,1992, Roy was injured when he was hit by an automobile while riding his bicycle. The hospital filed a claim with Life of Georgia for medical expenses of $20,401.37.[1]
*57 On October 1, 1992, Life of Georgia’s claims office received a medical claim form from the hospital. The form showed that Roy had a fractured ulna and a fractured femur. The claims agent took the form and compared it with the payment schedule that Life of Georgia had provided. The policy set out benefits for a broken upper arm and a broken lower arm, but did not provide a specific benefit for a broken ulna. The claims adjuster assigned the higher of the two benefits to the broken ulna claim. The claims adjuster encountered another problem when determining what amount to assign to the plaintiffs leg injury. The computer program the claims adjuster used did not distinguish between a broken “leg” and a broken “thigh.” The adjuster assigned the lesser amount for a broken “leg.”
The plaintiffs contend that Life of Georgia intentionally set up its computer program so that it would not distinguish between a “leg” and a “thigh,” in order always to pay the lesser amount for a “leg.” This contention by the plaintiffs amounts to a mere showing of nonpayment. However, it is not enough that the plaintiffs make a showing of nonpayment. Instead, the law requires that the plaintiffs prove a bad faith nonpayment. Harrington v. Guaranty National Insurance Co., 628 So.2d 323, 325 (Ala.1993). The plaintiffs presented no evidence — only unsupported allegations in their brief — that Life of Georgia acted in bad faith. Therefore, the trial judge erred in not granting Life of Georgia’s motion for a directed verdict.
The plaintiffs sued Life of Georgia for bad faith refusal to pay a claim. The plaintiffs’ attorney sent Life of Georgia a letter requesting payment for X-rays, crutches, a wheelchair and ambulance transportation. Life of Georgia refused to pay those bills, claiming that those costs were never incurred. The plaintiffs later admitted in depositions that no such expenses were incurred. In fact, the plaintiff was not driven to the hospital in an ambulance, but was taken in an automobile.
It was not until May 1994 that the plaintiffs informed Life of Georgia of a valid claim. In May 1994, the defendant received the plaintiffs’ answers to interrogatories, which asserted that Life of Georgia should have paid the plaintiffs an additional $200 for a “thigh” fracture above what it had paid for a “leg” fracture. Before filing these answers to the interrogatories, the plaintiffs had never asked Life of Georgia to pay an additional $200 for a “thigh” fracture. Therefore, Life of Georgia was not aware that a “mistake” had been made.
As soon as the plaintiffs notified Life of Georgia of this mistake, Life of Georgia paid the additional $200 for the “thigh” fracture, an additional $50 for the multiple fracture, and 18% interest. Nevertheless, the plaintiffs continued with their “breach of contract” claim and “bad faith refusal to pay” claim. Life of Georgia moved for directed verdicts on both claims, arguing that it had paid the plaintiffs everything the plaintiffs were due under the contract and that it had not refused to pay any claims. The trial judge directed a verdict on the “breach of contract” claim, but denied a directed verdict on the “bad faith refusal to pay” claim.
The plaintiffs claim that Life of Georgia refused in bad faith to pay their claim, but the plaintiffs admit that they had already filed at least one improper claim for crutches, X-rays, and ambulance transportation. When Life of Georgia discovered that these costs were never incurred, it refused to pay that claim. The plaintiffs do not dispute that Life of Georgia was justified in refusing to pay that claim. The “bad faith refusal to pay” claim the plaintiffs filed did not notify Life of Georgia of the problem with the “thigh” payment. One and a half years later, the plaintiffs finally informed Life of Georgia of this problem. Life of Georgia did not refuse to pay the additional $200. Rather, it promptly paid that amount, with 18% interest.
“This Court has stated the elements of the tort of bad faith as follows:
*58 “‘(a) an insurance contract between the parties and a breach thereof by the defendant;
“ ‘(b) an intentional refusal to pay the insured’s claim;
“ ‘(e) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“‘(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
“‘(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
“ ‘In short, the plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.’
National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179,188 (Ala.1982).”
Harrington v. Guaranty National Insurance Co., 628 So.2d 828, 325 (Ala.1993) (First emphasis added; second emphasis original.)
The requirements of a “bad faith” action are extremely rigorous. The elements of a bad faith claim require more than mere allegations of bad faith. Those elements put the burden on the plaintiff to prove “the absence of any reasonably legitimate or arguable reason for [the] refusal [to pay].” This Court has clearly stated that it is not enough for the'plaintiff to allege that the defendant acted in bad faith, but that the plaintiff must prove that the defendant had absolutely no arguable reason to refuse payment.
I would hold that the plaintiffs did not present sufficient evidence from which a jury could find the absence of any reasonably legitimate or arguable reason for Life of Georgia’s refusal to pay the plaintiffs’ claims. Certainly, the plaintiffs’ submission of a fraudulent claim — the request for payment for X-rays, crutches, a wheel chair and ambulance transportation, when in fact those services were never used — was enough to cause Life of Georgia to scrutinize all claims filed by the plaintiffs in order to assure itself that the charges the plaintiffs alleged were in fact legitimate.
Furthermore, the plaintiffs never attempted to disprove Life of Georgia’s contention that the plaintiff failed to inform them of the “thigh” mistake. Ms. Frances Gipson admitted under cross-examination that her letters to Life of Georgia’s office in Atlanta did not discuss the “thigh” mistake. Therefore, the plaintiffs did not prove “the absence of any reasonably legitimate or arguable reason” for Life of Georgia’s refusal to pay.
I would reverse and remand with instructions for the trial court to enter a judgment notwithstanding the verdict on the “bad faith refusal to pay” claim. Therefore, I must respectfully dissent.

. The award of $20,401.37 was for the "bad faith refusal to pay” claim. That award is supposed to compensate the plaintiffs for mental and emotional distress caused by the bad faith refusal to *57 pay the claim. At trial, the evidence showed that Roy’s medical bills were $20,401.37. However, it is undisputed that most of those costs were not covered by the policy, and that those that were covered were paid.