**Marija WOLFF, individually and/or as Executrix of the estate of C. Robert Wolff, Plaintiff–Appellee,**

v.

**ALLSTATE LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 91–7809.

United States Court of Appeals, Eleventh Circuit.

March 22, 1993.

J. Mark Hart, Bert S. Nettles, Spain, Gillon, Grooms, Blan & Nettles, Birmingham, AL, for defendant-appellant.

Richard W. Whittaker, Joe S. Pittman, Pittman, Whittaker & Pittman, Enterprise, AL, for plaintiff-appellee.

Appeal from the United States District Court for the Middle District of Alabama.

Before BIRCH, Circuit Judge, JOHNSON, Senior Circuit Judge, and THOMAS*, Senior District Judge.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following a jury verdict in favor of the plaintiff-appellee Marija Wolff on her claims of fraudulent suppression and breach of contract against the defendant-appellant Allstate Life Insurance Co. ("Allstate"). The claims involved Allstate's termination of and refusal to pay on an insurance policy issued on the life of Wolff's husband. The district court entered judgment in accordance with the jury verdict, and Allstate now appeals. On appeal, Allstate claims that it was entitled to judgment notwithstanding the verdict ("JNOV") on Wolff's fraudulent suppression claim, and to a new trial on Wolff's breach of contract claim. For the reasons that follow, we affirm the district court's denial of Allstate's motion for JNOV, but reverse the district court's entry of judgment and remand the case for a new trial on both the fraudulent suppression and breach of contract claims.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

In December 1981, Marija Wolff and her husband, Dr. C. Robert Wolff, purchased a joint mortgage protection life insurance policy ("the 1981 policy") in the amount of $100,000 from Allstate.[1] The 1981 policy

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. The policy provided the Wolffs "mortgage protection" in that the amount of coverage was designed to ensure that the surviving spouse

provided for "decreasing term" coverage, under which the Wolffs would have life insurance coverage for fifteen years but the amount of coverage would decrease each year. At the end of the fifteenth year, the policy would terminate without value. To avoid this result, the policy also contained a limited right for either or both of the Wolffs to convert the insurance coverage into "whole life insurance." The exercise of this option would afford the converting party permanent coverage in the amount of the face value of the policy at the time of conversion.

In 1987, the Wolffs obtained a new mortgage in the amount of $180,000. Because of the increased mortgage debt, Dr. Wolff met with Allstate agent Frank Stinson to increase the couple's life insurance protection. In February 1988, the Wolffs submitted an application to Allstate for a new policy which would provide $100,000 in whole life insurance on each of them. The Wolffs' application instructed Allstate to terminate the 1981 policy if their application was accepted.

In March 1988, Allstate accepted Dr. Wolff's application for coverage and issued a $100,000 policy ("the 1988 policy") on his life. However, Allstate rejected Mrs. Wolff for coverage because of health problems discovered in her required medical examination. Stinson arranged for the Wolffs to amend their application to preserve the 1981 policy so that Mrs. Wolff would not be left without coverage.

On May 9, 1988, Stinson met with the Wolffs in their home to deliver Dr. Wolff's new policy, to have the Wolffs sign the amended application preserving the 1981 policy coverage, and to determine how the Wolffs wished to respond to Allstate's denial of Mrs. Wolff's application for coverage. For most of the meeting, Stinson and Dr. Wolff conferred alone, but Mrs. Wolff was called into the room as the meeting concluded. In the presence of Stinson, Dr. Wolff explained to Mrs. Wolff the steps he felt they should take to obtain the desired amount of coverage. In the course of their conversation, the Wolffs agreed that Mrs. Wolff should exercise her right to convert her coverage under the 1981 policy (with its current face value of $77,000) into whole life insurance.[2] In addition, the Wolffs decided that they would continue Dr. Wolff's decreasing term coverage under the 1981 policy to supplement his coverage under the 1988 policy. Stinson then provided Mrs. Wolff with the paperwork to authorize the conversion of her coverage under the 1981 policy.[3]

On May 15, 1988, Allstate approved the conversion of Mrs. Wolff's coverage under the 1981 policy into a $77,000 whole life insurance policy. Ten days later, an Allstate underwriter terminated the 1981 policy in its entirety effective May 9, 1988.[4] Although Allstate sent the Wolffs a premium refund check on the 1981 policy, it did not send them any written statement notifying them that the 1981 policy had been canceled. Allstate proceeded to collect its premiums on the remaining policies by bank draft on the Wolffs' joint bank account.[5]

---

could satisfy the outstanding balance on the Wolffs' home mortgage loan.

**2.** The 1981 policy provided that no medical examination would be required in order to convert coverage from term to whole life insurance.

**3.** The course of events described above was contested at trial by Allstate. Stinson, testifying for Allstate, denied that anything was said at the meeting about continuing Dr. Wolff's coverage under the 1981 policy. According to Stinson's testimony, Dr. Wolff told Stinson that the 1988 whole life insurance policy would constitute the sole source of his insurance coverage. In denying Allstate's motion for JNOV, however, the district court correctly determined that under its instructions, the jury must have believed Mrs. Wolff's version of the meeting in order to have reached its verdict in her favor. *See Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 179 (11th Cir.1992) (jury is presumed to follow district court's instructions).

**4.** According to Allstate, the retroactive termination merely reflected the fact that the 1981 policy terminated automatically upon conversion.

**5.** The only notice the Wolffs received of Allstate's withdrawal of premiums was through the monthly bank statements on the joint account. These statements listed only two withdrawals by Allstate per month, one for $80 and the other

In December 1988, Dr. Wolff died. Mrs. Wolff filed claims with Allstate for benefits under both the 1981 and 1988 policies. Allstate paid $100,000 under the 1988 policy, but denied benefits under the 1981 policy claiming that the policy had been canceled. This lawsuit followed.

### B. *Procedural History*

On May 4, 1989, Marija Wolff filed a complaint against Allstate in federal district court, invoking the court's diversity jurisdiction. *See* 28 U.S.C.A. § 1332 (West Supp.1992). On November 6–7, 1989, the district court conducted a jury trial on Wolff's breach of contract, fraudulent misrepresentation, and fraudulent suppression claims.[6] At the conclusion of trial, the jury returned a verdict in favor of Wolff on the breach of contract and fraudulent suppression claims, but in favor of Allstate on the fraudulent misrepresentation claim. The district court denied Allstate's post-trial motions for JNOV and for a new trial, and Allstate now appeals.

### II. ANALYSIS

On appeal, Allstate challenges the district court's denial of its motion for JNOV on the fraudulent suppression claim. A motion for JNOV challenges the sufficiency of the evidence and raises a question of law subject to *de novo* review. *See Braswell v. ConAgra, Inc.,* 936 F.2d 1169, 1172 (11th Cir.1991); *Gregg v. U.S. Industries, Inc.,* 887 F.2d 1462, 1468 (11th Cir. 1989). In evaluating the district court's denial of the motion:

[T]he Court should consider all of the evidence ... with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied....

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

In addition, Allstate challenges the district court's denial of its motion for a new trial. In this motion, Allstate asserted that the jury's verdict, finding both a breach of contract and fraudulent suppression, was factually inconsistent and therefore legally unsupportable under Alabama law. The district court's denial of Allstate's motion for a new trial is reviewable for a clear abuse of discretion. *See Hessen v. Jaguar Cars, Inc.,* 915 F.2d 641, 644–45 (11th Cir.1990).

### A. *The Fraudulent Suppression Claim*

In her final amended complaint, Wolff alleged that Allstate fraudulently suppressed from her its intent to cancel her husband's coverage under the 1981 policy. The jury found Allstate liable to Wolff for

for $290. The bank statements do not identify which policies the withdrawals were taken in payment of. The parties agree that the $80 withdrawals were made to cover the premiums on Mrs. Wolff's converted $77,000 whole life insurance policy. The parties, however, dispute the purpose of the $290 withdrawals. Mrs. Wolff asserts that she reasonably believed that the $290 withdrawals covered Dr. Wolff's premiums under both the 1981 and 1988 policies. This belief was based on the fact that the policy the Wolffs originally applied for (providing $100,000 whole life insurance on both Dr. and Mrs. Wolff) would have carried a monthly premium of $350. Wolff claimed that the $290 premium withdrawals appeared proportionally consistent with the $177,000 in coverage that she believed her husband was carrying. All-

state, on the other hand, claimed it reached an oral agreement with Dr. Wolff to set the premium on his 1988 policy at $290 per month. However, Allstate was unable to produce any documentation in support of this assertion.

6. Wolff brought the breach of contract and misrepresentation claims in her capacity as the representative of her husband's estate. The fraudulent suppression claim was brought in Marija Wolff's own capacity. Wolff had also alleged other state law causes of action in her complaint, but the district court granted summary judgment in favor of Allstate on these other claims before trial. Wolff has not appealed the entry of summary judgment against her on these claims.

the suppression and awarded Wolff $250,-000 in damages. Allstate argues that it was entitled to JNOV on the claim because Wolff failed to establish the essential elements of a fraudulent suppression action under Alabama law.

■ Fraudulent suppression actions in Alabama are governed by statutory authority:

§ 6–5–102. Suppression of material facts.

Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Ala.Code § 6–5–102 (1975). The Alabama Supreme Court has identified five essential elements of a fraudulent suppression claim: (1) a duty on the part of the defendant to disclose; (2) the defendant's suppression of material facts; (3) the defendant's knowledge of the facts and their materiality; (4) action by the plaintiff in reliance on the suppression; and (5) damages resulting from the reliance action. *See Hardy v. Blue Cross and Blue Shield of Alabama,* 585 So.2d 29, 32 (Ala.1991). Allstate argues that Wolff failed to establish three of these factors: (1) a duty on its part to disclose the termination of Dr. Wolff's insurance policy to Mrs. Wolff; (2) justifiable reliance by Mrs. Wolff on Allstate's silence; and (3) proof of damages proximately caused by Wolff's reliance on the suppression.

### 1. Allstate's Duty to Disclose

■ Under Alabama law, a duty to disclose exists only if there are "confidential relations" or "particular circumstances" which give rise to an obligation to communicate. Ala.Code § 6–5–102 (1975). The duty to speak depends upon "the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." *RNH, Inc. v. Beatty,* 571 So.2d 1039, 1042 (Ala.1990); *Jim Short Ford Sales, Inc. v. Washington,* 384 So.2d 83, 86 (Ala.1980). "If a plaintiff

offers evidence of special circumstances suggesting that the defendant should have disclosed certain material facts, then whether the defendant had a duty to communicate these facts is for the jury to determine." *Interstate Truck Leasing, Inc. v. Bender,* 608 So.2d 716, 720 (Ala. 1992).

■ We agree with the district court that Wolff offered sufficient evidence of special circumstances from which a jury could find that Allstate had a duty to disclose its intent to terminate her husband's coverage under the 1981 policy. Wolff was a joint named insured with her husband under the 1981 policy until she converted her coverage. Wolff produced evidence to show that Allstate knew that she and her husband intended to procure a life insurance package which would mutually protect each of their interests in paying off their home mortgage in the event that one of them were to die. Allstate agent Stinson was present when Wolff and her husband expressed their understanding that they could convert Mrs. Wolff's coverage under the 1981 policy while preserving Dr. Wolff's coverage under the policy. A reasonable jury could find that Stinson, acting for Allstate, knew of Allstate's intent to terminate the 1981 policy in its entirety if Wolff converted her coverage. A jury could also find that Stinson knew that this information was material to the Wolffs in planning their insurance protection. Under these circumstances, a reasonable jury could find that Allstate had a duty to disclose its intent to cancel Dr. Wolff's coverage under the 1981 policy, either at the time Wolff decided to exercise her right to convert her coverage or at the time Allstate attempted to cancel the policy.

Allstate advances two reasons why it did not owe any duty to disclose its handling of Dr. Wolff's insurance coverage to Mrs. Wolff: (1) Mrs. Wolff was neither an insured nor a beneficiary[7] under the 1981 policy after she exercised her right of conversion; and (2) Allstate dealt with the Wolffs at arms length under circumstances

---

7. Under the 1981 policy, Dr. Wolff listed his estate as the named beneficiary.

in which no duty to speak could arise. Neither of these factors is sufficient to negate Allstate's duty to disclose as a matter of law.

■ Wolff's status under the 1981 policy does not itself obviate Allstate's duty to disclose. *See Gillion v. Alabama Forestry Ass'n*, 597 So.2d 1315, 1322 (Ala.1992) (wife could maintain fraud action against insurance company on husband's policy if she could show that fraud was committed on and relied upon by her); *National States Ins. Co. v. Jones*, 393 So.2d 1361, 1363–64 (Ala.1980) (plaintiff could maintain fraud action against insurance company even though she was not the owner, insured, or beneficiary of her aunt's life insurance policy where evidence showed that the plaintiff cared for her aunt, paid her aunt's insurance premiums, and fraud was committed on the plaintiff). Instead, "each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." *See Jim Short Ford Sales*, 384 So.2d at 87. Based on the evidence at trial, the jury could find that Allstate knew that its cancellation of the 1981 policy's coverage of Dr. Wolff would primarily affect Mrs. Wolff despite the fact that the 1981 policy named Dr. Wolff's estate as his beneficiary. Moreover, it was Wolff's conversion of her coverage under the 1981 policy that allegedly prompted Allstate's termination of her husband's coverage. Under these circumstances, we conclude that there was sufficient evidence to support a duty on Allstate to disclose its intent to terminate Dr. Wolff's coverage under the policy to Mrs. Wolff regardless of Mrs. Wolff's status under the policy.

■ Likewise, we reject Allstate's assertion that this case involves an arms length transaction in which no duty to disclose could arise as a matter of law. *See Trio Broadcasters, Inc. v. Ward*, 495 So.2d 621, 623–24 (Ala.1986); *Bank of Red Bay v. King*, 482 So.2d 274, 285–86 (Ala.1985). To determine whether the parties are both capable of handling their own affairs and whether the negotiations are truly at arms length, Alabama courts consider all the relevant circumstances, including the relative knowledge and bargaining power of the parties. *See, e.g., Richard Brown Auction & Real Estate, Inc. v. Brown*, 583 So.2d 1313, 1317 (Ala.1991); *Norman v. Amoco Oil Co.*, 558 So.2d 903, 905 (Ala.1990); *Richardson v. Thomas*, 535 So.2d 91, 94 (Ala.1988). Under the circumstances of this case, a jury could find that Allstate had a duty to inform Wolff of its intent to terminate her husband's insurance coverage under the 1981 policy by reason of its superior expertise, bargaining power, and knowledge of the suppressed fact. *See First Bank of Boaz v. Fielder*, 590 So.2d 893, 897 (Ala.1991) (bank had a duty to inform husband and wife loan applicants that the husband's application for life insurance had been rejected, when bank knew that the couple did not want a loan unless they could successfully obtain the life insurance); *American Pioneer Life Ins. Co. v. Sandlin*, 470 So.2d 657, 666–67 (Ala.1985) (life insurance company owed duty to communicate to the plaintiff the unusual and financially imprudent nature of the requested annuity because the life insurance company was in a superior bargaining position and had particular knowledge and expertise not shared by the plaintiff).

## 2. Justifiable Reliance

Allstate also argues that it was entitled to judgment as a matter of law on the fraudulent suppression claim because no reasonable jury could have found Wolff's reliance on Allstate's silence to be justified. According to Allstate, the 1981 policy by its terms informed the Wolffs that the policy would terminate upon conversion. Therefore, Wolff could not have relied on Allstate's silence to assume the policy was still in force. In its "Conversion Privilege" section, the 1981 policy provided:

> You may buy a new contract on *one or each* of the joint insureds' lives at any time while:
>
> 1. All due payments have been made; and

2. The amount of the death benefit in force is at least $5,000.

For each new contract you want, you must:

1. Give us a written app; and

2. Make the first payment for the new contract.

Each new contract will start on the date you sign the new app. This date is called 'new start date'. *This contract will stop at the end of the day prior to the new start date.*

Allstate Joint Decreasing Term Policy, at 6 (emphasis added).

 Reliance is an essential element of a fraudulent suppression action. *See Hardy,* 585 So.2d at 32. The plaintiff must establish that her reliance was "justifiable"—i.e., that she did not "close [her] eyes to avoid the discovery of the truth." *First Bank of Boaz,* 590 So.2d at 897 (applying "justifiable reliance" standard to claim of fraudulent suppression); *Johnson v. State Farm Ins. Co.,* 587 So.2d 974, 979 (Ala.1991) (adopting justifiable reliance standard for fraud actions). The determination of whether the plaintiff's reliance was justifiable is generally a question of fact for the jury to decide. *See AT & T Information Systems, Inc. v. Cobb Pontiac–Cadillac, Inc.,* 553 So.2d 529, 532 (Ala. 1989).

 Under Alabama law, written disclosures may defeat a claim of justifiable reliance. *See McConico v. Corley, Moncus, and Bynum, P.C.,* 567 So.2d 863, 864 (Ala.1990) (plaintiff's reliance was not justifiable where all documents prepared by the defendant and signed by the plaintiff in connection with the transaction contradicted the plaintiff's asserted belief). To defeat a claim for fraud as a matter of law, however, the written disclosure must be clearly discoverable on a review of the documents. *See Alfa Mut. Ins. Co. v.*

*Northington,* 561 So.2d 1041, 1045–46 (Ala. 1990).

 Under the circumstances of this case, we believe that Wolff's reliance was properly submitted to the jury. Wolff testified that she believed that her conversion would result only in the termination of her coverage under the 1981 policy. The 1981 policy did not clearly disclose that the policy would automatically terminate *in its entirety* upon Wolff's election to convert her coverage into a whole life policy. Significantly, the conversion privilege provisions provide that joint insureds may *each* elect to convert the policy and that the face amount and insurance plans among joint insureds need not be identical.[8] Wolff produced evidence to show that Allstate knew that she and her husband intended to convert her coverage into whole life insurance while preserving Dr. Wolff's coverage under the policy. Yet Allstate gave the Wolffs no indication that it would not carry out their wishes or that the 1981 policy coverage was not divisible.[9] We conclude that Wolff's belief was not "so patently and obviously false that [she] must have closed [her] eyes to avoid discovery of the truth." *Hickox v. Stover,* 551 So.2d 259, 263 (Ala.1989) (quoting *Southern States Ford, Inc. v. Proctor,* 541 So.2d 1081, 1091–92 (Ala.1989) (Hornsby, C.J., concurring specially)). Therefore, Allstate was not entitled to judgment as a matter of law on the fraudulent suppression claim on this basis.

### 3. Damages Resulting from Wolff's Reliance

 Under Alabama law, a plaintiff asserting a fraudulent suppression claim must establish damages which were proximately caused by the plaintiff's reliance on the fraudulent suppression. *See Hardy,* 585 So.2d at 32. Allstate argues that Wolff failed to establish this aspect of her

---

8. The policy provided:
 If you want a new contract on each joint insured:
 1. The face amounts do not have to be the same; and
 2. The plans chosen do not have to be the same.

9. Indeed, Allstate's assertion that it owed no duty to disclose the termination of Dr. Wolff's coverage under the 1981 policy to Mrs. Wolff because she was not a party to his coverage indicates that even Allstate viewed the 1981 policy as divisible in some sense.

claim because (1) Wolff did not show proximate cause because it was the terms of the 1981 policy, rather than Allstate's fraudulent suppression, which led to Allstate's termination of the policy and to Wolff's damages, and (2) Wolff offered only speculative and conjectural evidence that she would have secured alternative insurance on her husband's life if disclosure had been made. We reject both of these contentions.

■ We find the evidence more than sufficient to support the jury's finding of proximate cause. Under Alabama law, the jury is allowed broad discretion in determining whether an asserted injury is traceable to the defendant's tortious conduct. *See, e.g., Coosa Valley Bank v. Taylor–Holmes Indus. Supply, Inc.,* 420 So.2d 51, 54–55 (Ala.1982). Contrary to Allstate's assertions, Wolff's asserted injuries were not premised on Allstate's termination of the contract *per se,* but rather on Allstate's failure to notify her of the termination. Whether the termination was proper or not, Wolff alleged that she could have protected herself from injury if only she had been told of Allstate's plans. Once the jury found Wolff's reliance on Allstate's suppression to be justified, the jury was warranted in tracing Wolff's mental anguish to the suppression. Therefore, we will not overturn the jury verdict on this basis.

■ We also reject Allstate's argument that Wolff's proof of damages was so speculative that the case should not have been submitted to the jury. Under Alabama law, the determination of damages is a question of fact for the jury to resolve. *See Griggs v. Finley,* 565 So.2d 154, 161 (Ala.1990). In this case, Wolff testified that she would have procured substitute insurance on her husband's life in an amount at least sufficient to cover the couple's home mortgage if she had known of Allstate's termination of the 1981 policy. A jury could find that Allstate's continued suppression after its purported termination

lulled Wolff into inaction by creating a false sense of security. *See State Farm Mut. Auto. Ins. Co. v. Ling,* 348 So.2d 472, 474–75 (Ala.1977) (finding fraud where insurance company dissuaded insured from filing suit until statute of limitations passed). Alabama courts have allowed recovery for plaintiffs who have been deprived of their ability to obtain alternative coverage by the fraudulent action of an insurance company, so long as there is evidence that the party to be insured was otherwise insurable. *Compare National States Ins. Co. v. Jones,* 393 So.2d at 1368 (finding that plaintiff suffered actual damages from false representations of coverage because the plaintiff lost the opportunity to obtain other insurance) *with Old Southern Life Ins. Co. v. McConnell,* 52 Ala.App. 589, 296 So.2d 183, 185–86 (Civ. App.1974) (refusing to recognize damages where there was no competent evidence that the plaintiff's husband would have been insurable). In this case, Dr. Wolff's insurability was established by the fact that Allstate itself accepted Dr. Wolff's 1988 application for additional coverage. Therefore, the evidence of damages was sufficient to go to the jury.[10]

## B. *The Alleged Inconsistency in the Jury Verdicts*

Allstate also claims that a new trial is required in this case because the jury returned an inconsistent verdict by finding Allstate liable for both fraudulent suppression and breach of contract. Specifically, Allstate argues that the breach of contract verdict required the jury to find that the 1981 policy was in full force on the day of Dr. Wolff's death, while the fraudulent suppression verdict required an inconsistent finding that Allstate terminated the 1981 policy without notifying Mrs. Wolff. The district court denied Allstate's motion for a new trial, concluding that Alabama courts have found inconsistency in fraud and breach of contract claims only where

---

**10.** Allstate also argues that Wolff's claim of damages was speculative because Dr. Wolff would not have consented to any other insurance on his life. This argument is irrelevant to Wolff's claim. Alabama law expressly allows

any spouse to maintain life insurance on the other spouse regardless of the other spouse's consent to coverage. *See* Ala.Code § 27–14–6(a)(1) (1975).

the plaintiff seeks recission because of fraud in the inception of the contract. Based on recent authority from the Alabama Supreme Court, we conclude that the jury in this case did in fact return an inconsistent verdict which can have no effect under Alabama law. Therefore, Allstate is entitled to a new trial on both the fraud and breach of contract claims.

 Under Alabama law, plaintiffs may present alternative or inconsistent theories of liability to the jury, but juries are not permitted to return factually inconsistent verdicts. *See National Security Fire and Cas. Co. v. Vintson,* 414 So.2d 49, 51 (Ala.1982); *United States Fidelity and Guar. Co. v. McKinnon,* 356 So.2d 600, 607–608 (Ala.1978). When inconsistent theories are presented to the jury, the defendant is entitled to a jury instruction informing the jury that it must choose between inconsistent theories of recovery, and that it may not return an inconsistent verdict. *See Burkett v. Burkett,* 542 So.2d 1215, 1220 (Ala.1989). If the trial court erroneously refuses such an instruction, or if the jury persists in returning an inconsistent verdict despite the instruction, the verdict cannot stand and the defendant is entitled to a new trial. *See id.; Gold Kist, Inc. v. Ford,* 439 So.2d 39, 43 (Ala.1983).

The Alabama Supreme Court has recently revisited the issue of inconsistent verdicts in the context of actions alleging both fraud and breach of contract. *See Liberty Nat'l Life Ins. Co. v. Jackson,* 603 So.2d 1005 (Ala.1992). In *Jackson,* the plaintiff alleged that the defendant insurer's agent made repeated representations that the plaintiff's life insurance policy was still in force when in fact the policy had been terminated for non-payment of premiums. *Id.* at 1006–07. When the insurance company refused payment under the policy, the plaintiff sued both for breach of the insurance contract and for the allegedly fraudulent representations of the insurance agent in representing that the policy was still in force. *Id.* at 1007. The jury found for the plaintiff on both theories. The Alabama Supreme Court held that the verdicts were mutually exclusive and could not stand. The court held:

> To find in favor of Mrs. Jackson on the fraud count, the jury necessarily found that the policy was not in force at that time. However, to find in favor of Mrs. Jackson on the breach of contract count, the jury necessarily had to find that the policy was in force at the time of her husband's death. These findings are factually inconsistent.

*Id.* at 1009–10.

 Thus, *Jackson* holds that the determinative factor in identifying inconsistent verdicts in fraud and breach of contract cases is whether the finding of fraud necessarily involved a finding that in fact no contract existed.[11] If the jury verdict finding fraud necessarily involved a finding that no contract existed, an accompanying verdict finding a breach of contract would inherently contradict the fraud verdict. *See Vintson,* 414 So.2d at 51; *McKinnon,* 356 So.2d at 607.

 In this case, Wolff's complaint alleged that Allstate breached its contract with Dr. Wolff when it failed to pay on a valid claim under the 1981 policy. Contrary to Wolff's assertions,[12] the breach of

---

11. Prior to *Jackson,* there was some authority under Alabama law for the proposition that verdicts finding both fraud and breach of contract would be deemed inconsistent only where the alleged fraud occurred in the inception of the contract. *See Marshall Dubin Food Corp. v. Equitable Life Assur. Society,* 834 F.2d 949, 954 (11th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988); *Braswell,* 936 F.2d at 1173; *Herring v. Prestwood,* 414 So.2d 52, 57–58 (Ala.1982); *Vintson,* 414 So.2d at 51. However, *Jackson,* which was not a fraud in the inception case, clearly extends the inconsistent verdict analysis to all cases alleging both fraud and breach of contract.

12. On appeal, Wolff attempts to characterize her breach of contract claim as an action for damages arising from Allstate's unauthorized termination of the 1981 policy. However, Wolff's position at trial was that the policy was never terminated, as illustrated in the following exchange between the district court and Wolff's counsel:

> THE COURT: ... Do you concede that they terminated the policy because of the conversion of Mrs. Wolff, conversion of her policy?
> MR. WHITTAKER: No, sir. I don't think they ever terminated this policy.
> THE COURT: Which policy?

contract claim was tried on the theory that Allstate's purported termination of the 1981 policy was ineffective and that the contract remained in full force at Dr. Wolff's death.[13] In reaching its verdict for Wolff on the breach of contract claim, therefore, the jury necessarily found that the 1981 policy was in force at Dr. Wolff's death and that Allstate's purported termination of the policy was ineffective.

Wolff's fraudulent suppression action, in contrast, alleged that Wolff was injured by Allstate's failure to disclose its intent to cancel the 1981 policy. In reaching its verdict for Wolff on this claim, the jury necessarily found that (1) Allstate had a duty to disclose its intent to terminate the 1981 policy, (2) Allstate suppressed this material fact, (3) Allstate knew that its termination of the policy was material to Wolff, (4) Wolff relied on the suppression, and (5) Wolff suffered injury as a result of her reliance. See Hardy, 585 So.2d at 32. It is in this last finding of injury that the fraudulent suppression claim contradicts the jury verdict on the breach of contract claim. Wolff's proof of injury depended upon a finding that Allstate had in fact terminated the 1981 policy—if the policy was in force on the date of Dr. Wolff's death, then Dr. Wolff was carrying all of the coverage Mrs. Wolff had expected and relied upon. However, in this case the jury found both that (1) the 1981 policy was in force at the time of Dr. Wolff's death, and (2) Mrs. Wolff was injured because she relied on the existence of the 1981 policy to forego the opportunity to obtain substitute insurance. We conclude that these findings are contradictory and render the jury's verdict inconsistent under Alabama law. Because the district court denied Allstate's

request for an instruction on inconsistent verdicts, and because the jury proceeded to return an inconsistent verdict, the verdicts cannot stand and Allstate is entitled to a new trial. See Burkett, 542 So.2d at 1220; Gold Kist, 439 So.2d at 43.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Allstate's motion for JNOV on Wolff's fraudulent suppression claim. The district court's entry of judgment, however, is VACATED as inconsistent under Alabama law and the case is REMANDED for a new trial on the breach of contract and fraudulent suppression claims.

---

MR. WHITTAKER: In the 1981 policy. We have said they denied the claim for that reason. But we're not admitting that there's been any proper cancellation of that policy at all. In fact, the evidence is that the 290 was to cover both policy premiums. So I'm not here admitting that there's been any cancellation of that 1981 policy whatsoever. That's what part of the problem is.

13. Wolff gained certain evidentiary advantages by targeting Allstate's failure to pay on the policy as the act of breach. A plaintiff asserting a

failure to pay action against a life insurance company need only establish (1) the existence of the policy sued on, (2) the death of the insured, and (3) the giving of notice and proof of death as required by the policy. See Angus v. Liberty Nat'l Life Ins. Co., 457 So.2d 971, 972 (Ala.1984). Under Alabama law, the burden then shifts to the defendant to prove an effective cancellation or termination of the policy as justification for its failure to pay the claim. See id. In this case, the jury found that Allstate failed to meet this burden.