**Lezlie SHERRIN, Plaintiff–Appellee, Cross–Appellant,**

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Defendant–Appellant, Cross Appellee.**

**No. 92–6107.**

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1993.

---

Sandy G. Robinson, Mobile, AL, for appellant.

C.S. Chielpalich, Richard Beckish, Mobile, AL, and Conrad S.P. Williams, III, New Orleans, LA, for appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and YOUNG *, Senior District Judge.

PER CURIAM:

Defendant–Appellant, Northwestern National Life Insurance Company ["Northwestern"], appeals from the entry of a judgment following a jury verdict for $50,000 in compensatory damages and $150,000 in punitive damages. Plaintiff–Appellee, Lezlie Sherrin, has filed a counterappeal as to certain rulings by the district court. For the reasons that follow, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

This action arises out of the refusal of Northwestern to pay insurance benefits in the amount of $50,000 on the life of Raymond Sherrin, the deceased husband of Appellee, Lezlie Sherrin. The life insurance application, written on December 17, 1987, stated that Ray Sherrin was a non-smoker and had not smoked for the previous 12 months.

Northwestern issued a policy on a non-smoking basis in the amount of $50,000, effective January 11, 1988, on Ray Sherrin's life. The policy contained riders covering Lezlie Sherrin and their two children for $25,000 and $5,000, respectively. Ray Sherrin died on February 28, 1989. Because the insured's death occurred within the first two years of the policy, Northwestern undertook an investigation pursuant to the terms of the contract's contestability clause. The investigation revealed that Ray Sherrin was a cigarette smoker at the time of his death and at the time of the application. Benefits were denied under Section 27–14–7 of the Code of Alabama (1975), which permits an insurer to avoid payment on a policy when material misrepresentations are made in the application.

Lezlie Sherrin filed a complaint against Northwestern in federal district court[1] setting forth three counts: (1) breach of life insurance contract; (2) bad faith denial of payment; and (3) misrepresentation and suppression of material facts. Sherrin sought punitive damages as to Counts Two and Three.

The trial record reflects that Lezlie and Ray Sherrin and Danny Little, a Northwestern insurance agent, met to discuss life insurance on December 17, 1987.[2] A conflict in testimony existed as to whether Judy Plovanich, who was Little's office manager at that time, and Joani Baecher, Lezlie Sherrin's sister, were also present.[3] The meeting took place in the dining room of a restaurant owned by the Sherrins.

At trial, Lezlie Sherrin testified that Little filled out the insurance application at issue. She said she believed the life insurance policy was solely to cover her life and that she was covered from the time Little accepted

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

1. Diversity of citizenship provided the jurisdictional basis for this case. 28 U.S.C. § 1332.

2. Little solicited insurance contracts for other companies as well. A third-party complaint filed by Northwestern against Little was severed and stayed as a result of Little's bankruptcy.

3. Sherrin and Baecher testified that Baecher was present; Little testified that Plovanich was present and that Baecher was not present. Plovanich, who was Little's fiancee at the time of trial, testified that she was present and did not list Baecher as among those in attendance at the meeting. Baecher testified that Plovanich was not present at the meeting; Sherrin could not recall whether Plovanich attended the meeting.

her check. She offered no testimony concerning any statements made as to whether her husband, Ray, was also covered. She testified that Ray had not signed the application and that it was possible that she had signed Ray's name. Because she did not read the application, she did not notice that it had been designated as a non-smoking application and that it was primarily on her husband's life, not her own. She also testified that she did not read the life insurance policy prior to her husband's death.

Lezlie Sherrin and Baecher testified that they never heard Danny Little ask Ray Sherrin whether or not he smoked, and that Ray did, in fact, smoke cigarettes during the meeting with Little. Lezlie Sherrin admitted that her husband did not smoke in close proximity to their baby daughter, who was a newborn at the time, but that their daughter was in a baby seat in the restaurant kitchen during the application process. Baecher corroborated this testimony.

Undisputed evidence revealed that Lezlie Sherrin never advised anyone associated with the insurance investigation that Little had filled out the application incorrectly or that she and Ray Sherrin smoked during the meeting in which the insurance application was completed. Evidence reflected that, during the investigation, Lezlie Sherrin, by letter, informed a Northwestern claims examiner that Ray Sherrin had stopped smoking for a period of time around the time the insurance application was taken. Sherrin claimed that she made this false statement because, after her husband had died, Danny Little had advised her to tell Northwestern's claims examiners that Ray was not a smoker so that her claim for death benefits would not be denied. Sherrin later retracted the false statement and informed the examiner that her late husband had smoked during the twelve-month period prior to the date of the insurance application, and that he had smoked continuously since 1978.

Danny Little denied advising Lezlie Sherrin to lie to Northwestern's claims examiners. Little claimed that Ray Sherrin did not smoke during the application process, that he did not know Ray well, and that he had never seen Ray smoke.[4] Little testified that he had asked Ray whether he had smoked cigarettes "in the last twelve months" and that Ray answered "no." Little also testified that he did not realize it was not Ray's signature on the Northwestern application until he was deposed prior to trial. According to Little and Plovanich, Lezlie Sherrin had held her baby during the application process. Little testified that he had advised the Sherrins that, based on the information on the insurance application, they had coverage as of the day they paid the premium.[5]

At the close of the evidence, the district court granted a directed verdict in favor of Northwestern as to the bad faith denial of payment claim. In so ruling, the district court found that there was no evidence that Northwestern knew of Little's alleged misrepresentation at the time they denied the death benefit to Lezlie Sherrin, or that Northwestern had reason at that point to investigate Little's fitness as an agent.

The jury returned a verdict in favor of Lezlie Sherrin as the remaining claims of breach of contract and fraudulent misrepresentation or suppression of material facts. The district court entered judgment based on the jury's interrogatory answers in favor of Plaintiff–Appellee for compensatory damages in the amount of $50,000 plus interest based on the jury's finding of breach of contract and fraud, and an additional $150,000 in punitive damages based on the jury's finding that Little misrepresented the facts concerning the insurance policy which were relied on by Sherrin to her detriment, or that he suppressed material facts concerning the policy of insurance. The court denied Northwestern's motion for judgment notwithstanding

---

**4.** In June of 1987, Little sold a health insurance policy to Ray Sherrin in which Sherrin stated "yes" to the question: "Have you smoked tobacco ... in the past two years?" Little also admitted that he had taken out a ten-year term policy on his own life on a nonsmoking basis even though he had smoked continuously since he was a teenager.

**5.** Lezlie Sherrin wrote a check for the premium and gave it to Danny Little on the same day the application was taken.

the verdict or to alter and amend the judgment, and this appeal ensued.

## STANDARD OF REVIEW

■ Motions for directed verdict and judgment notwithstanding the verdict are subject to *de novo* review. Accordingly, we apply the same standard the district court must apply in determining whether to grant the motion.

> [W]e consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied....

*McKinney v. Pate*, 985 F.2d 1502, 1506 (11th Cir.1993) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

■ Allegations of error in rulings on evidentiary matters are subject to an abuse of discretion standard. *Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1169 (11th Cir. 1991).

## DISCUSSION

### A. THE BREACH OF CONTRACT CLAIM.

■ We conclude that the evidence was sufficient to deny Northwestern's motions for directed verdict and judgment notwithstanding the verdict as to the breach of contract claim.

The undisputed facts reflect that the Sherrins' insurance application to Northwestern was for life insurance coverage on Ray Sherrin, Lezlie Sherrin, and their children; that Danny Little had the authority to represent to them that their Northwestern insurance coverage would take effect upon payment of their initial premium and did, in fact, make such a representation to Lezlie Sherrin; that Little had the authority to accept the Sherrins' check to Northwestern in payment of the initial premium, and that he did accept the check.

A substantial conflict in the evidence existed as to whether Ray Sherrin or Danny Little answered the question on the insurance application concerning Ray Sherrin's smoking history. The verdict reflects that the jury rejected Danny Little's version of the meeting in favor of the testimony of Lezlie Sherrin: Little, with the knowledge that Ray Sherrin was a smoker, answered "no" to the question concerning whether Ray had smoked within the last year, and Little made this misstatement without the knowledge or participation of the Sherrins. The jury was properly instructed that, under such circumstances, Northwestern was liable for Little's misrepresentation. Northwestern continued to accept the Sherrins' payment of premiums until Raymond Sherrin died, then denied benefits to Lezlie because the Sherrins held a non-smoking policy on Ray's life although Ray was a smoker at the time the application was taken.

We conclude that the evidence was sufficient to deny Northwestern's motion for directed verdict on Sherrin's breach of contract claim, and that a judgment notwithstanding the verdict was inappropriate when the jury resolved the factual disputes in Sherrin's favor on the claim.

### B. FRAUD CLAIMS.

The jury returned a general verdict for Sherrin on the fraud count. That count was submitted to the jury on two theories—fraudulent misrepresentation and suppression of material facts.

The Code of Alabama provides as follows:

> § 6–5–100 Fraud—right of action generally.

> Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.

>> § 6–5–101 Same—misrepresentation of material facts.

> Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocent-

ly and acted on by the opposite party, constitute legal fraud.

§ 6–5–102 Suppression of material facts.

Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

■ The elements of fraud based on the misrepresentation of material facts are: (1) a misrepresentation; (2) of a material fact; (3) that was relied upon by the plaintiff; (4) who was damaged as a proximate result of the misrepresentation. *Earnest v. Pritchett–Moore*, 401 So.2d 752, 754 (Ala.1981).

■ The elements of fraud based on the suppression of material facts are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or non-disclosure of material facts by the defendant; (3) defendant's knowledge of the facts and their materiality; (4) action by the plaintiff in reliance on the suppression; and (5) damages resulting from the reliance action. *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524 (11th Cir.1993) (citing *Hardy v. Blue Cross and Blue Shield of Ala.*, 585 So.2d 29, 32 (Ala.1991)).

■ Northwestern unsuccessfully moved for a directed verdict on the fraud count at the close of Sherrin's case and at the close of the evidence, and subsequently moved for a judgment notwithstanding the verdict on the count, which also was denied. Northwestern contends that it was entitled to a judgment as a matter of law on the fraud count because Lezlie Sherrin did not satisfy the reliance and resulting damage requirements of her cause of action.

Lezlie Sherrin's fraudulent misrepresentation action alleges that she was injured by Little's statement to her during the December 17 meeting that the Northwestern life insurance coverage was effectively immediately, when Little knew that coverage was in force immediately only as long as the application was completed accurately. Sherrin's suppression action alleges that Little never told her that the application contained incorrect information regarding Ray Sherrin's status as a smoker.

Reliance and resulting damages are essential elements of both fraudulent misrepresentation and suppression claims. To prevail on her fraud case, the jury needed to find, *inter alia*, that Little made the alleged misrepresentation or suppression, that Lezlie Sherrin relied on the Northwestern life insurance policy on Raymond Sherrin being in force, and that she suffered damages as a result of the policy not being in force when her husband died.

As noted earlier, Lezlie Sherrin testified that she had intended to secure an insurance policy on her life and that she had believed the Northwestern application was for insurance on her own life. She offered no testimony concerning any statements made by Little as to whether Ray Sherrin's life was also covered.

■ Sherrin's testimony shows, as a matter of undisputed fact, that she did not rely on the alleged fraudulent misrepresentation or suppression with respect to her husband's Northwestern coverage because she did not know that he had such coverage.[6] Under the circumstances of this case, we find that the district court erred in submitting the fraud claim to the jury and in denying Northwestern's motion for judgment notwithstanding the verdict on this claim.

## C. INCONSISTENT VERDICTS.

■ Northwestern also argues that Appellee's theories of fraud and contract are mutually exclusive: To determine that fraud had occurred, the jury had to find that no contract existed; to find a breach of contract, the jury had to determine that there was no fraud. On this basis, Northwestern unsuccessfully moved to prevent the fraud claim from going to the jury; unsuccessfully requested a jury instruction which would have prevented the jury from awarding relief on

**6.** Any claim that Raymond Sherrin was defrauded with respect to the Northwestern policy would not survive in favor of his personal representa- tive. *Gillion v. Alabama Forestry Ass'n,* 597 So.2d 1315 (Ala.1992); *see* Ala.Code 1975 § 6–5–462.

both theories; and unsuccessfully moved for a judgment notwithstanding the verdict.

The issue of inconsistent verdicts in the context of actions alleging both fraud and breach of contract under Alabama law was addressed recently by a panel of this Court in *Wolff v. Allstate Life Insurance Co.,* 985 F.2d 1524 (11th Cir.1993), and by the Supreme Court of Alabama in *Liberty National Life Insurance Co. v. Jackson,* 603 So.2d 1005 (Ala.1992). The *Wolff* opinion was released subsequent to the oral argument in the instant case and has not been briefed or argued by the parties.

In *Wolff,* a widow brought a suit against a mortgage insurer based on its refusal to pay her a benefit upon her husband's death. She alleged breach of contract, fraudulent suppression, and fraudulent misrepresentation. The insurer maintained that the policy had been cancelled. The jury returned a verdict in favor of the insurer on the fraudulent misrepresentation claim, and for the plaintiff on the fraudulent suppression and breach of contract claims.

On appeal, the defendant insurer asserted that the jury's verdict, which found both a breach of contract and fraudulent suppression, was factually inconsistent and therefore, legally insupportable under Alabama law. This Court reviewed the record and found that the district court did not err in sending the fraudulent suppression claim to the jury, then proceeded to address the issue of the inconsistent verdicts. This Court recognized that, under Alabama law, a plaintiff may present alternative or inconsistent theories of liability to the jury, but the jury is not permitted to return a factually inconsistent verdict. A defendant, therefore, is entitled to a jury instruction informing the jury that it must choose between inconsistent theories of recovery. If the trial court refuses the instruction, or if the jury is so instructed but nevertheless returns an inconsistent verdict, the verdict cannot stand and the defendant is entitled to a new trial.

This Court concluded in *Wolff* that the verdict reflected that the jury found both that (1) the policy was in force at the time plaintiff's husband died; and (2) the plaintiff was injured because she relied on the existence of the policy to forego the opportunity to obtain substitute insurance.[7] Because the district court had denied the insurer's request for an instruction on inconsistent verdicts, and because the jury proceeded to return a verdict inconsistent under Alabama law, the Court held that the verdicts could not stand and the insurer was entitled to a new trial.

In *Liberty National,* the plaintiff alleged that the defendant insurer's agent had made repeated representations that a policy on the life of plaintiff's husband was in effect when, in fact, it had been terminated for non-payment of premiums. When the insurance company refused to pay benefits, the plaintiff sued for breach of the insurance contract and for the allegedly fraudulent misrepresentations of the insurance agent that the policy was still in force. The jury found for plaintiff on both theories. The Supreme Court of Alabama reversed and remanded for a new trial, stating:

> [The plaintiff's] fraud claim is based on a conversation that she says she had with [the insurance agent] on January 16, 1990, in which [the agent] allegedly represented to [the plaintiff] that her husband's life insurance policy was in force when, in fact, it was not. To find in favor of [the plaintiff] on the fraud count, the jury necessarily found that the policy was not in force at that time. However, to find in favor of

---

**7.** This Court found that the breach of contract claim in *Wolff* was tried on the theory that the insurer's purported termination of the policy was ineffective and that the contract remained in full force and effect at the time of plaintiff's husband's death. In reaching its verdict for plaintiff on the breach of contract claim, therefore, the jury necessarily found that the policy was in force at the time of his death and that the insurer's purported termination of the policy was ineffective.

The fraudulent suppression action in *Wolff* alleged that the plaintiff was injured by the insurer's failure to disclose its intent to cancel the policy. The plaintiff's proof of injury, therefore, depended upon a finding that the insurer actually had terminated the policy. This Court reasoned that, if the policy was in force on the date of the plaintiff's husband's death, then he was carrying all the insurance the plaintiff had expected and relied upon.

[the plaintiff] on the breach of contract count, the jury necessarily had to find that the policy was in force at the time of her husband's death. These findings are factually inconsistent.

603 So.2d at 1009–1010.

Assuming without deciding that the verdicts in the instant case were inconsistent under *Wolff* and *Liberty National*, we need not remand because, in the instant case, we have found that only the contract theory is supportable.

## D. BAD FAITH FAILURE TO PAY CLAIM.

■ In her cross-appeal, Lezlie Sherrin contends that the district court erred in granting a directed verdict for Northwestern on her bad faith failure to pay claim. Sherrin argues that a jury question was raised as to the bad faith claim because Northwestern had no legal grounds to refuse to honor the contract.

■ Under Alabama law, an insurer may be held liable for bad faith when it refuses to pay a claim and (1) has no lawful basis for refusing to pay and has actual knowledge of that fact; or (2) has intentionally failed to determine whether it had a lawful basis for refusing to pay. *Turner v. State Farm Fire and Casualty Cos.*, 614 So.2d 1029 (Ala.1993).

■ As a general rule, when a fact issue exists as to the validity of the insurance claim, the bad faith claim should not be submitted to the jury and summary judgment for the defendant is proper. *Id.; National Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357 (Ala.1982). Under Alabama law, the plaintiff in a bad faith refusal case has the burden of proving:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

In short, plaintiff must go beyond a mere showing of nonpayment and prove bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*Davis v. Cotton States Mutual Insurance Co.*, 604 So.2d 354, 359 (Ala.1992) (quoting *National Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala.1982)).

The evidence at trial revealed an arguable reason for Northwestern's refusal to pay Sherrin's claim—the insured, who was a smoker at the time the application was taken, was issued a non-smoking policy based upon representations on the application. "If any one of the reasons for denial of coverage is at least 'arguable,' [the] Court need not look any further." *Gillion v. Alabama Forestry Ass'n*, 597 So.2d 1315, 1321 (Ala.1992) (quoting *McLaughlin v. Alabama Farm Bureau Mut. Casualty Ins. Co.*, 437 So.2d 86, 91 (Ala.1983)).

Sherrin also focuses on the second category of bad faith refusal to pay. She asserts that Northwestern denied her claim without conducting an adequate investigation which would have led to a determination that Danny Little was responsible for the inaccurate response to the smoking history question. Sherrin argues that the evidence at trial showed that Northwestern had ample information after the Sherrin policy was issued to make a reasoned determination that Little was an unfit agent. We disagree.

Uncontroverted evidence at trial established that Danny Little had been an agent in good standing with the Alabama Department of Insurance since 1974, that Northwestern conducted a background check of Little before accepting his application for status as an agent, and that no complaints concerning Little were ever received by Northwestern or by the Alabama Department of Insurance. As noted above, the

district court, in granting Northwestern's motion for directed verdict on the bad faith claim, found that Northwestern had no knowledge of any acts which called into question Little's fitness as an agent, and, therefore, the company had no reason to investigate Little. We agree with the district court's assessment of this evidence.[8]

Finally, we note that Northwestern offered Lezlie Sherrin an opportunity to provide any information she possessed that would be helpful to its resolution of the claim. She did not avail herself of this opportunity to explain that neither she nor her husband had misrepresented his status as a smoker on the insurance application.

After a thorough review of the record, we find no evidence that Northwestern denied Sherrin's claim in bad faith. Accordingly, we conclude that the district court properly granted Northwestern's motion for directed verdict on the bad faith claim.

## E. PUNITIVE DAMAGES.

■ In Alabama, punitive damages are ordinarily not recoverable for breach of contract. *Corson v. Universal Door Systems, Inc.,* 596 So.2d 565, 572 (Ala.1991). Any punitive damage award in this case must be justifiable under the claims of fraud or bad faith failure to pay. In light of our findings above, we conclude that the award of punitive damages in this case must be reversed.

## F. MISCELLANEOUS ISSUES.

■ We also reject Lezlie Sherrin's claim that the district court abused its discretion in excluding the testimony of Plaintiff's witness, Scott Pierce. Pierce would have testified that he was a smoker who was issued a Northwestern policy listing him as a non-smoker. Pierce's policy application was taken by a sub-agent of Little's and was signed by Little. According to Sherrin, Pierce's testimony was offered to show that Northwestern was on notice that Danny Little had knowingly sold other Northwestern non-smoker policies to smokers, and to further support Sherrin's claim that Northwestern failed to properly investigate her claim prior to denial. This evidence was not relevant to the issue as to whether Northwestern had reason to know of Little's alleged unfitness, because the Pierce application was not taken by Little.

Finally, we find no merit in Sherrin's argument in her counterclaim that the district court abused its discretion in denying "Plaintiff's Objection and Motion to Strike Defendant's Amendment to Motion for JNOV; Motion to Alter and Amend Judgment."

## CONCLUSION

For the reasons expressed, the award of compensatory damages against Northwestern for breach of contract is affirmed, and the award of compensatory and punitive damages for fraud is reversed.[9]

---

**8.** Sherrin also asserts that Northwestern failed to make an adequate attempt to obtain Ray Sherrin's health records as well as a Prudential life insurance policy issued earlier in 1987 on the life of Ray Sherrin. The evidence concerning the Prudential policy would have shown that, at the time Ray Sherrin completed the application in May of 1987, he was a smoker. The information in Sherrin's medical records is not a part of the record on appeal. In any event, as described by Lezlie Sherrin, the records would have reflected that Ray Sherrin described himself as a smoker in 1982. Common sense suggests that the Prudential policy would have supported Northwestern's determination that, at the time Ray Sherrin applied for its insurance coverage, he had misrepresented himself as a non-smoker either by answering the smoking question incorrectly or by signing an application that contained incorrect information.

**9.** Subsequent to oral argument in this case, Appellant Lezlie Sherrin moved to certify two questions to the Supreme Court of Alabama. Because of our disposition of this appeal, we find it unnecessary to seek the answers to these questions and, therefore, deny the motion.