

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2006

# Angrisani v. Cap Access Network

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Angrisani v. Cap Access Network" (2006). *2006 Decisions.* Paper 1266.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1502

FRANK ANGRISANI,
Appellant

v.

CAPITAL ACCESS NETWORK, INC.;
ADVANCEME, INC;
COUNTRYWIDE BUSINESS ALLIANCE;
GARY A. JOHNSON, in his individual and official capacities;
W. CARTER SULLIVAN, III, in his individual and official capacities;
MARC TESLER, in his individual and official capacities;
JAMES DUFFY, in his individual and official capacities;
DAVID SCHACNE, in his individual and official capacities;
BRIAN ZIPP, in his individual and official capacities;
LES FALKE, in his individual and official capacities

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-03167)
District Judge: Honorable William J. Martini

Argued March 30, 2006

Before:  RENDELL, SMITH and BECKER, Circuit Judges.

(Filed: April 14, 2006)

Kevin Kiernan     [ARGUED]
Kiernan & Campbell
206 Claremont Avenue
Montclair, NJ 07042
    *Counsel for Appellant*

Mark W. Lerner     [ARGUED]
Kasowitz, Benson, Torres & Friedman
1633 Broadway, 21st Floor
New York, NY 10019
    *Counsel for Appellees*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge.*

This case comes to us on appeal from the District Court's grant of summary judgment in favor of defendant Capital Access Network, Inc. ("Capital"). Frank Angrisani left his lucrative position at Western Union to accept a position as CEO of Capital. Angrisani claims that he was induced to leave his position with Western Union and accept the position with Capital as a result of false statements made to him by Capital's representatives. In addition, Angrisani claims that Capital tortiously interfered with his employment relationship with Western Union. He bases this tortious interference claim on essentially the same theory as his common-law fraud claim, i.e., that Capital induced him to leave his lucrative position with Western Union through the use of false statements. Angrisani also claims that Capital breached its agreement to pay him a year-end bonus and grant him stock to which he was contractually entitled. The

2

District Court granted summary judgment against Angrisani on all three claims.[1]  We will

reverse as to the claim for fraudulent misrepresentation.[2]

## I.  Fraud

Under New Jersey law, applicable here, a common-law fraud action has five

elements: (1) a material misrepresentation of a presently existing or past fact; (2)

knowledge or belief by the defendant of its falsity; (3) an intention that the other person

rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 584 (1997).  In order to succeed on an

allegation of fraud, a litigant must prove his claim by clear and convincing evidence.  *Fox

v. Mercedes-Benz Credit Corp.*, 281 N.J. Super. 476, 484 (N.J. App. Div. 1995).

Statements as to future or contingent events, as to expectations and probabilities,

or as to what will be or is intended to be done in the future, do not constitute

misrepresentations even though they turn out to be false, at least where they are not made

with intent to deceive, and where the parties have equal means of knowledge.  *Middlesex*

---

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332.  We have jurisdiction over an appeal from the District Court's grant of summary judgment pursuant to 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment, and apply the same standard the District Court was required to apply. *Stratton v. E.I. DuPont DeNemours & Co.*, 363 F.3d 250, 253 (3d Cir. 2004).  Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  We resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

3

*County Sewerage Authority v. Borough of Middlesex*, 74 N.J. Super. 591, 605 (N.J. App. Div. 1962). Similarly, statements that can be categorized as "puffery" or vague and "ill-defined opinions" are not assurances of fact and do not constitute misrepresentations. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 434 (D.N.J. 1998).

Angrisani identifies four material misrepresentations he alleges were made by Capital's representatives, including Gary Johnson, the chairman of Capital's board of directors, Marc Tesler, another Capital board member, and Les Falke, the company's president and a board member. These alleged misrepresentations include (1) the existence of a legal opinion verifying that Capital's business practices did not violate the law; (2) that the company was operating at a rate of less than 5% loan losses; (3) the existence of a patent or pending patent as to Capital's method of loan processing; and (4) the commitment of 100 million dollars in capital financing. The issue before us is whether the record regarding Capital's representations presents issues of material fact for a jury as to the elements of this claim. We find that it does.

The District Court rejected Angrisani's claims based on its conclusion that some of the statements made to Angrisani were statements of opinion and future expectations, and that Angrisani was an intelligent and sophisticated businessman and should have more fully investigated the claims of Capital's agents. However, several of the assurances given and facts stated constituted misrepresentations of present facts. Furthermore, the question of whether Angrisani's investigation and reliance was

4

reasonable presents a factual issue that is more properly left to the judgment of the jury. *See Rodi v. S. New England School Of Law*, 389 F.3d 5, 16 (1st Cir. 2004) (reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury); *Miller v. Premier Corp.*, 608 F.2d 973, 982 (4th Cir. 1979) ("[I]ssues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact."); *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1531 (11th Cir. 1993). Given the now apparent falsity of many statements made to him by persons of authority at Capital, we cannot say that it was unreasonable for Angrisani to rely on these statements. *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 n.1 (1981) ("One who engages in fraud, however, may not urge that one's victim should have been more circumspect or astute.") (*citing Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 N.J. Super. 332, 342 (N.J. App. Div.), *aff'd*, 78 N.J. 320 (1978)). Accordingly, we will reverse the District Court's grant of summary judgment and remand for the case to proceed to trial on the claim of fraudulent inducement.

II.  Tortious Interference

Under New Jersey law, a claim of tortious interference requires a showing of (1) intentional and malicious interference (without justification); (2) with a prospective or existing economic or contractual relationship with a third party; (3) causing the loss of prospective gain; and (4) damages. *See, e.g., Printing Mart-Morristown v. Sharp Elec.*

5

*Corp.*, 116 N.J. 739, 751 (1989). Angrisani's claim for tortious interference alleges that Capital's representatives intentionally and tortiously interfered with his business relationship with Western Union. The District Court granted summary judgment in favor of Angrisani. We agree with the District Court's conclusion.

Angrisani has failed to produce any evidence suggesting that Capital acted to induce Western Union to terminate him, or that it prevented Angrisani from performing his job. Angrisani has not alleged that Capital requested Western Union to sever its relationship with him. Mere misrepresentations made to a third party's employee for the purpose of recruiting that employee do not constitute tortious interference without some additional showing either of a specific intent to interfere with the prior employment relationship or of direct causal interference with the performance of that employment agreement. Therefore, we will affirm the District Court's grant of summary judgment as to Angrisani's tortious interference claim.

### III. Breach of Contract

Angrisani's breach of contract claim consists of a claim for a year-end bonus, and a claim for the value of 85,354 shares of stock representing 4% of the company's shares. The District Court originally denied Capital's motion for summary judgment as to this claim. However, upon Capital's motion for reconsideration, the District Court granted summary judgment with respect to Angrisani's claim to the stock.

In Capital's motion for summary judgment, it argued that Angrisani was not

6

entitled to the 85,354 shares of stock because his agreement unambiguously provided that he would receive not stock but 85,354 stock options, which Angrisani never attempted to exercise. In fact, this assertion is supported by the text of the employment contract, which stated, under the heading "Stock Options," "you will be granted 85,354 stock options." (Pa163). The contract further provided that the options would have an exercise price per share between $20 and $25 as established by the Board of Directors and that the options would fully vest on Angrisani's termination.[3] The District Court properly found that Angrisani had never attempted to exercise his stock options and that Capital had never thwarted any attempt by Angrisani to do so. We agree. At deposition, Angrisani admitted that he had never attempted to exercise the stock options. He was asked, "So at no time did you attempt to exercise the options?" He answered, "Correct." Angrisani Dep. at 275, Pa122. Accordingly, he has no right to the stock.

Angrisani's theory regarding this claim has morphed over time. In his amended complaint and in his brief in opposition to Capital's motion for summary judgment, he argued that his employment agreement entitled him to stock. In his motion in opposition to defendant's motion for reargument, and now on appeal, Angrisani argues that he is

---

When a stock option "vests," the holder of the option typically has an immediate right to exercise the option and thereby convert it into stock by paying the exercise price. However, a stock option does not automatically become stock at the time that it vests; an action– the exercise– is usually required on the part of the option holder. *See* William M. Fletcher, *Fletcher Cyclopedia Corporations* § 5575 (2001 ed.); *Lucente v. International Business Machines Corp.*, 146 F.Supp.2d 298 (S.D.N.Y. 2001), *rev'd and remanded on other grounds*, 310 F.3d 243 (2d Cir. 2002).

entitled to *stock options*, that Capital violated his employment contract in seeking to unilaterally change the terms of the options contract. However, Angrisani did not advance this argument to the District Court in the first instance, and we conclude that the District Court was correct not to consider it at reargument. Furthermore, we will not consider it for the first time on appeal.

Thus, we agree with the analysis of the District Court. As Angrisani never attempted to exercise the options referred to in his employment agreement, he has no claim for breach of contract as to the 85,354 shares of stock. We will affirm the District Court's grant of summary judgment as to this breach of contract claim.

## IV.

In sum, we will reverse the District Court's grant of summary judgment with respect to Angrisani's claim for common-law fraud. We will affirm the District Court's order granting summary judgment as to Angrisani's claims for tortious interference and breach of contract.